**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| MICHAEL AND LYNN OGBIN,<br>         Plaintiffs,<br><br>     v.<br><br>GE MONEY BANK, T.J. KELLEY,<br>INC., and PORTFOLIO RECOVERY<br>ASSOCIATES, LLC,<br>         Defendants. | CIVIL NO. 10-5651(NLH)(AMD)<br><br>**OPINION** |

**APPEARANCES:**

LEWIS G. ADLER
ROGER C. MATTSON
LAW OFFICE OF LEWIS ADLER
26 NEWTON AVENUE
WOODBURY, NJ 08096

     *Attorneys for plaintiffs*

DONALD S. MAURICE , JR.
RACHEL FRANCESCA MARIN
THOMAS R. DOMINCZYK
MAURICE & NEEDLEMAN, PC
5 WALTER E. FORAN BOULEVARD
SUITE 2007
FLEMINGTON, NJ 08822-4672

     *Attorneys for defendant Portfolio Recovery Associates, LLC*

**HILLMAN**, District Judge

     Plaintiffs, Michael and Lynn Ogbin, have filed this putative

class action case claiming that defendants violated several laws

when they improperly contacted plaintiffs in early 2009 regarding a

debt that plaintiffs paid off in October 2001.  Defendant Portfolio

Recovery Associates, LLC has moved to dismiss plaintiffs' claims

for their failure to state any cognizable claim.[1]  For the reasons

expressed below, defendant's motion will be granted.

**BACKGROUND**

Plaintiffs claim that Portfolio Recovery Associates, LLC

("PRA") is a debt collector that in early 2009 sent plaintiffs a

notice concerning an outstanding bill in the amount of $686.04.

Plaintiffs claim that in April 2009, they told PRA that the debt

had been previously satisfied in October 2001 and requested that

PRA verify the debt.  Plaintiffs allege that PRA failed to verify

the debt and has continued to conduct business in New Jersey as a

debt collector without having posted the required bond.  Plaintiffs

claim that PRA's conduct has violated the Fair Debt Collection

---

[1]By stipulation, plaintiffs have dismissed their claims
against defendant GE Money Bank.  (Docket No. 14.)  With regard
to defendant T.J. Kelly, Inc., it appears that entity, which does
business as Kelly Karpets, was served while this case was pending
in New Jersey Superior Court.  The president of T.J. Kelly, Inc.
provided his consent to the removal of the case to this Court,
which was effected on October 30, 2010.  (Docket No. 1-2.)  To
date, no appearance by counsel on behalf of T.J. Kelly, Inc. has
been entered, and the time for T.J. Kelly, Inc. to answer or
otherwise respond has passed.  See Fed. R. Civ. P. 81(c)(2).  The
only claim alleged by plaintiffs against T.J. Kelly, Inc. is that
it, along with GE Money Bank, "had an illegal collection agency,
Portfolio, to send out collection notices," in violation of New
Jersey's Consumer Fraud Act.  (Compl. ¶ 23.)  Because the Court
has found in this Opinion that plaintiffs have not asserted any
cognizable claim against Portfolio, plaintiffs' claim against
T.J. Kelly, Inc. also fails.  Thus, regardless of T.J. Kelly's
failure to appear in this action, plaintiffs' claim against it
must be dismissed.  See Bryson v. Brand Insulations, Inc., 621
F.2d 556, 559 (3d Cir. 1980) (holding that a "district court may
on its own initiative enter an order dismissing the action
provided that the complaint affords a sufficient basis for the
court's action").

Practices Act (FDCPA), 15 U.S.C. § 1962, et seq., the Truth-in-Consumer Contract and Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14, and the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 et seq. Plaintiffs purport to bring these claims on their behalf and on behalf of similarly situated individuals.

Defendant has moved to dismiss plaintiffs' claims on several bases. Plaintiffs have opposed defendant's motion.

## DISCUSSION

**A.   Jurisdiction**

PRA removed this case from state court on the basis that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act (CAFA). Jurisdiction may also be premised upon 28 U.S.C. § 1331 for plaintiffs' federal claim, and 28 U.S.C. § 1367 for plaintiffs' state law claims.

**B.   Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the liberal federal pleading rules, it is not

necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has instructed district courts to engage in a two-part analysis in reviewing a complaint under Rule 12(b)(6).  First, the factual and legal elements of a claim should be separated; a district court

must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950).  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'"  Id. (quoting Iqbal, 129 S. Ct. at 1950).  A complaint must do more than allege the plaintiff's entitlement to relief.  Id.; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").  A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached

thereto as exhibits, and matters of judicial notice.  Southern

Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd., 181

F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an

undisputedly authentic document that a defendant attaches as an

exhibit to a motion to dismiss if the plaintiff's claims are based

on the document."  Pension Benefit Guar. Corp. v. White Consol.

Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).   If any other

matters outside the pleadings are presented to the court, and the

court does not exclude those matters, a Rule 12(b)(6) motion will

be treated as a summary judgment motion pursuant to Rule 56.  Fed.

R. Civ. P. 12(b).

## C.   Analysis

PRA has moved to dismiss all claims in plaintiffs' complaint

pursuant to Federal Rule 12(b)(6) for their failure to state any

cognizable claim.  First, PRA argues that plaintiffs' FDCPA claim

fails for two reasons: (1) their claim was not brought within one

year from the date of the allegedly improper notice as required by

the Act, and (2) plaintiffs have failed to allege that the debt at

issue was an obligation of a consumer to pay money arising out of a

transaction that was primarily for personal family or household

use.  Next, PRA argues that plaintiffs' TCCWNA claim fails because

plaintiffs have not pleaded the required elements that (1) PRA

entered into a written contract with them, (2) PRA gave or

displayed any written consumer warranty, notice or sign to them, or

(3) PRA violated a provision in any warranty, notice or contract.
Finally, PRA contends that plaintiffs' CFA claim fails because the
CFA does not apply to debt collectors, and plaintiffs' claims
against PRA otherwise do not pertain to the purchase of merchandise
or real estate.

The Court agrees with PRA that plaintiffs have failed to state
any viable claim.  Addressing plaintiffs' CFA claim first, "to
state a cause of action under the CFA, a plaintiff must allege the
commission of a deception, fraud, misrepresentation, etc., 'in
connection with' the sale of merchandise or services."  Castro v.
NYT Television, 851 A.2d 88, 95 (N.J. Super. Ct. App. Div. 2004)
(citing N.J.S.A. 56:8-1).  To satisfy this requirement, "'[t]he
misrepresentation has to be one which is material to the
transaction . . . made to induce the buyer to make the purchase,'"
id. (quoting Gennari v. Weichert Co. Realtors, 691 A.2d 350, 366
(N.J. 1997), and the complaint must allege an "'ascertainable loss
of moneys or property, real or personal,'" id. (citing N.J.S.A.
56:8-19) (other citation omitted).

In their opposition to PRA's motion, plaintiffs focus on the
elements of proving a CFA claim, see Cox v. Sears Roebuck & Co.,
647 A.2d 454, 462-63 (N.J. 1994) (explaining that the elements of a
CFA claim are: (1) unlawful conduct by the defendant; (2) an
ascertainable loss on the part of the plaintiff; and (3) a causal
relationship between the defendant's unlawful conduct and the

plaintiff's ascertainable loss), but side-step PRA's argument that the CFA does not apply to debt collectors.  Regardless of plaintiffs' ability to fit their allegations into the elements of a CFA claim, their CFA claim fails because the Act does not apply to a debt collector's efforts to collect a debt.  See Boyko v. American Intern. Group, Inc., 2009 WL 5194431, *4 (D.N.J. 2009) (explaining that the defendant debt collector could not be held liable under the CFA because it did not sell any merchandise, real estate, or debt to the plaintiff when it sent notices to plaintiff regarding the debt) (citing Hoffman v. Encore Capital Group, Inc., No. A-3008-07T1, 2008 WL 5245306, at *3 (N.J. Super. Ct. App .Div. Dec.18, 2008) (holding collection activities did not involve sale of merchandise to consumers), cert. denied, 198 N.J. 316, 966 A.2d 1080 (N.J. 2009); Joe Hand Promotions, Inc. v. Mills, 567 F. Supp. 2d 719, 724 (D.N.J. 2008) (holding letter claiming money owed for sale of pay-per-view program did not involve the sale of merchandise)).  Plaintiffs have not articulated any rebuttal to the application of this view of the CFA to their case.[2]

With regard to plaintiffs' TCCWNA claim, that Act protects consumers by requiring that consumer contracts be clearly written and understandable.  Barrows v. Chase Manhattan Mortgage Corp., 465

---

[2]Plaintiffs simply state that PRA's citation to the Boyko case "missed the mark" because evidence may show that PRA owned the debt.  (See Op. at 5-6.)  Even if that were true, plaintiffs have not alleged that PRA attempted to sell the debt to plaintiffs.

F. Supp. 2d 347, 362 (D.N.J. 2006) (citing <u>Alloway v. General Marine Industries, L.P.</u>, 695 A.2d 264, 274 (N.J. 1997)).  The TCCWNA prohibits a "seller, lessor, lender, or bailee" from giving a written notice to a consumer, defined as "any individual who buys, leases, borrows, or bails any money, property, or service which is primarily for personal, family, or household purposes," that includes a provision that violates state or federal law. N.J.S.A. 56:12-15.  The terms "seller, lessor, lender, or bailee" are not defined by statute, and to define those terms, a reviewing court must rely on the plain language of the statute and give the language its ordinary meaning.  <u>See Barrows</u>, 465 F. Supp. 2d at 362 (citing <u>Miah v. Ahmed</u>, 846 A.2d 1244, 1249 (N.J.2004)).

Plaintiffs do not allege that PRA is "seller, lessor, lender, or bailee" of their debt.  They also do not claim that they bought leased, borrowed, or bailed any money, property, or service which is primarily for personal, family, or household purposes from PRA. As pleaded by plaintiffs, PRA acted as a debt collector to collect on a debt that plaintiffs incurred through the other defendants. Thus, plaintiffs' TCCWNA claim against PRA fails.  <u>See Boyko</u>, 2009 WL 5194431 at *5 (dismissing TCCWNA claim because plaintiff did not allege that the defendant was a seller, lessor, lender, or bailee and because the defendant did not sell, lease, lend or bail any money or property to the plaintiff).

Finally, with regard to plaintiffs' FDCPA claim, plaintiffs

argue that their claim should not be dismissed for failure to comply with the one-year filing deadline because PRA sent them another communication in July 2010, which is within one year of the filing of their complaint.  Plaintiffs argue that they should be permitted to amend their complaint to include allegations concerning that communication, as well as to clarify that they are consumers who borrowed money for personal use.[3]

Even if plaintiffs were permitted to amend their complaint to include allegations concerning PRA's July 2010 letter, plaintiffs' FDCPA claim would still fail.[4]  The FDCPA proscribes that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  One way for a debt collector to use "unfair or unconscionable means" to collect a debt is to not cease its collections efforts once a consumer has notified the debt collector in writing that he disputes the debt.

---

[3]Plaintiffs also argue that PRA's motion is premature because discovery needs to be undertaken to develop "key facts." A plaintiff's request for discovery cannot serve as a basis to deny a defendant's motion to dismiss, as the filing of such a motion serves to protect a defendant from being subjected to discovery, during which a plaintiff hopes that facts will be unearthed to support plaintiff's speculation. See, e.g., Giovanelli v. D. Simmons General Contracting, 2010 WL 988544, *5 (D.N.J. 2010) ("Discovery cannot serve as a fishing expedition through which plaintiffs search for evidence to support facts they have not yet pleaded."); Ogbin v. Citifinancial Mortg. Co., Inc., 2009 WL 4250036, *2 (D.N.J. 2009) (same).

[4]An amendment may only be permitted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment.  Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

The FDCPA specifically provides, "If the consumer notifies the debt collector in writing within the thirty-day period . . . that the debt, or any portion thereof, is disputed, . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt, . . . and a copy of such verification . . . is mailed to the consumer by the debt collector."  15 U.S.C. § 1692g(b).

Plaintiffs in this case claim that PRA violated § 1692g(b) because even after they notified PRA in April 2009 that they disputed PRA's collection efforts, PRA failed to obtain verification of the debt.[5]  (Compl. ¶¶ 13-14.)  This allegation fails to state a claim for a § 1692g(b) violation for several reasons.  First, plaintiffs do not allege that they notified PRA in

---

[5]Plaintiffs also claim that PRA violated N.J.S.A. 45:18-1, which provides, "No person shall conduct a collection agency, collection bureau or collection office in this state, or engage therein in the business of collecting or receiving payment for others of any account, bill or other indebtedness, . . . unless such person . . . has on file with the secretary of state sufficient bond as hereinafter specified."  Plaintiffs have not asserted an independent claim for a violation of N.J.S.A. 45:18-1, and instead it appears that plaintiffs have claimed that PRA's alleged failure to comply with N.J.S.A. 45:18-1 serves as evidence that PRA committed acts prohibited under the FDCPA, TCCWNA, and CFA.  Even if the bond requirement could serve as a predicate for liability under any of these statutes, plaintiffs' claims fail for other reasons as explained in this Opinion.

writing of their dispute over the debt.  Plaintiffs' state that in April 2009 they "told" PRA that the debt had been paid, and "requested" that PRA verify the debt.  (Compl. ¶ 8.)  The FDCPA requires that such notice be in writing.  15 U.S.C. § 1692g(b). Plaintiffs' allegation that they "told" PRA about their dispute is not sufficient under the Act.

Relatedly, the FDCPA requires that plaintiffs' written notice disputing the debt be provided to PRA within 30 days of PRA's written notice of the debt to plaintiffs.  Id. § 1692g(a). Plaintiffs claim that PRA "sent a notice" to them "on or about the beginning of 2009."  (Compl. ¶ 7.)  Even though plaintiffs claim they disputed the debt in April 2009, plaintiffs have failed to allege that their dispute was provided within the 30-day window, as it is unclear whether the "beginning of 2009" means March 2009.

Finally, to bring a claim for such a violation, the FDCPA instructs, "An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).  Even if plaintiffs satisfied the 30-day written notice requirement, and even if PRA thereafter failed to provide plaintiffs with verification of the debt, plaintiffs did not bring their claim for this alleged violation within one year of PRA's alleged violation.

In order to prevent the application of the one-year time limit
to their claim, plaintiffs have asked for leave to amend their
complaint to include allegations regarding a July 16, 2010 letter
from PRA to plaintiffs.  In that letter, PRA states that "it is our
understanding that you are disputing the balance of this account,"
and it instructs plaintiffs to "provide all details in writing,
including supporting documentation, to our office for review."
(Docket No. 13-2.)  Plaintiffs thus argue that if they were
permitted to amend their complaint to assert allegations based on
this letter, they would properly state a claim for a violation of §
1692g within the applicable limitations period.

Even if the Court were to allow plaintiffs to amend their
complaint, allegations concerning this letter would not save
plaintiffs' FDCPA claim.  Although the FDCPA contemplates a 30-day
window for a consumer to challenge the debt and request a
verification, the FDCPA is not clear on when the debt collector
must provide the verification requested by the consumer.  The FDCPA
simply instructs that the debt collector "cease collection of the
debt, or any disputed portion thereof, until the debt collector
obtains verification of the debt."  15 U.S.C. § 1692g(b).  Here, if
plaintiffs had alleged that they provided the proper written notice
to PRA within their 30-day deadline, and PRA has still failed to
provide that verification, perhaps plaintiffs' claim may not be
time-barred, as it could be argued that the July 2010 letter

evidences that PRA has improperly continued its collection

efforts.[6]  Plaintiffs, however, have not alleged facts to show that

they complied with their obligations under the FDCPA to properly

dispute the debt.[7]  Therefore, they have failed to state a claim

---

[6]It is questionable whether the July 2010 letter shows that
PRA has continued its collection efforts, as it states, "You must
provide all requested information to our company at the address
listed below no later than 20 days from the date of this letter.
This information is needed in order to close the investigation
concerning this account in a timely manner.  Your failure to
supply this information may result in the investigation being
terminated and the account being returned to the floor for
collection."  (Docket No. 13-2.)

It is also questionable whether plaintiffs' April 2009
"telling" to PRA that they disputed the debt is what prompted
PRA's July 2010 letter, as it states, "We are in receipt of your
recent dispute concerning the account referenced below."  (Id.
(emphasis added).)

[7]PRA argues that the one-year clock began when plaintiffs
received PRA's collection letter in "early 2009," and that the
July 2010 letter cannot extend the clock past "early 2010" to
cause plaintiffs' October 2010 complaint to be timely, because
the continuing violation doctrine does not apply to FDCPA claims.
If it were plaintiffs' claim that PRA's initial collection letter
to them violated the FDCPA because PRA sent the letter without
complying with New Jersey's bond requirement, see supra note 5,
then PRA's position is correct.  It would be the early 2009 PRA
letter that violated the FDCPA, and that discrete act would be
time-barred.  Plaintiffs would then have to advance a separate
and independent FDCPA violation based on the July 2010 letter to
save any FDCPA claim.  Plaintiffs, however, are not claiming that
the July 2010 letter constitutes a separate and independent
violation of the FDCPA.

The Court views plaintiffs' complaint, and their attempt to
amend their complaint, to instead claim that rather than the 2009
debt collection letter itself being the triggering violation, it
is PRA's continuing failure to provide a verification and cease
debt collection activities that violates the FDCPA.  As explained
above, if plaintiffs had complied with the FDCPA's requirements
to challenge the debt, and PRA continued its efforts to collect
the debt without providing verification, such a claim would not

that PRA has violated the FDCPA by not heeding the FDCPA's commands that debt collectors cease collection activity for a properly disputed debt.

**<u>CONCLUSION</u>**

For the reasons expressed above, defendant's motion to dismiss will be granted, the claims against the two remaining defendants dismissed.   An appropriate order will be entered.


Date: June 13, 2011                                  s/ Noel L. Hillman


At Camden, New Jersey                        NOEL L. HILLMAN, U.S.D.J.

---

be time-barred, as PRA's FDCPA-violative conduct would still be occurring.  As also explained above, however, plaintiffs' failure to provide written notice of its dispute cuts off such a claim.